**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| In re: Madison Chiropractic & Nutrition Center, LLC EIN: xx-xxx0856 | ) ) ) ) | Case No.: 18-82075-CRJ-11 |
| Debtor. | ) ) | CHAPTER 11 |

**DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT**
**PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE WITH**
**RESPECT TO DEBTOR'S PLAN OF REORGANIZATION**

**SPARKMAN, SHEPARD & MORRIS, P.C.**
P. O. Box 19045
Huntsville, AL 35804
Tel: (256) 512-9924
Fax: (256) 512-9837

Attorneys for Debtor-in-Possession

Dated: February 27, 2019

1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| In re: | Madison Chiropractic & Nutrition Center, LLC<br>EIN: xx-xxx0856 | ) ) ) ) |
| | Debtor. | ) ) ) |

Case No.: 18-82075-CRJ-11

CHAPTER 11

---

**FIRST AMENDED DISCLOSURE STATEMENT PURSUANT TO**
**SECTION 1125 OF THE BANKRUPTCY CODE WITH**
**RESPECT TO DEBTOR'S PLAN OF REORGANIZATION**

---

**THIS AMENDED DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR AND DESCRIBES THE TERMS AND PROVISIONS OF THE DEBTOR'S PLAN OF REORGANIZATION (THE "PLAN"). ANY TERM USED IN THIS DISCLOSURE STATEMENT THAT IS NOT DEFINED HEREIN HAS THE MEANING ASCRIBED TO THAT TERM IN THE PLAN.**

**I.**
**INTRODUCTION**

This Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with respect to the Debtor's Plan of Reorganization (the " Disclosure Statement") relates to the Debtor's Plan of Reorganization (the "Plan").

THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND INTEREST HOLDERS, AND URGES ALL CREDITORS TO VOTE IN FAVOR OF THE PLAN. CREDITORS ARE ENCOURAGED TO READ AND CONSIDER CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING THE PLAN OF REORGANIZATION ATTACHED HERETO.

OBJECTIONS TO CONFIRMATION OF THE PLAN MUST BE IN WRITING, STATE THE NATURE AND AMOUNT OF CLAIMS OR INTERESTS HELD OR ASSERTED BY THE OBJECTOR AGAINST THE DEBTOR'S ESTATE OR PROPERTY, THE BASIS FOR THE OBJECTION, AND THE SPECIFIC GROUNDS THEREFOR, AND SHALL BE FILED WITH THE COURT AND SERVED UPON THE DEBTOR AND THEIR COUNSEL IN THE MANNER

SET FORTH IN THE ORDER TO BE ISSUED BY THE BANKRUPTCY COURT UPON APPROVAL OF THIS DISCLOSURE STATEMENT.

NO PERSON IS AUTHORIZED BY THE DEBTOR TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS IN CONNECTION WITH THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE ATTACHMENTS HERETO. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES IMPLY THAT ALL OF THE INFORMATION IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF.

INFORMATION CONTAINED HEREIN REGARDING THE DEBTOR, ITS BUSINESS, ASSETS AND LIABILITIES HAS BEEN PROVIDED BY THE DEBTOR. WHERE STATED, THE DEBTOR HAS RELIED ON INFORMATION PROVIDED BY ADVISORS. THE DEBTOR DISCLAIMS ANY RESPONSIBILITY FOR THE ACCURACY OF THAT INFORMATION. THE DEBTOR AND ITS ADVISORS ARE UNAWARE OF ANY FALSE OR MISLEADING STATEMENT THAT WOULD MATERIALLY AFFECT A HYPOTHETICAL, INFORMED INVESTOR'S DETERMINATION ON HOW TO VOTE ON THE PLAN.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION ("SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

## II.
### GENERAL INFORMATION CONCERNING THE DEBTOR AND CERTAIN EVENTS PRECEDING THE DEBTOR'S CHAPTER 11 FILING

A.    **General Description of the Debtor's Pre-Petition Business.**

Dr. Gregory B. Millar DC CCEP formed the Debtor as a domestic limited liability company ("LLC"), in Madison County, Alabama, on June 16, 2016, for the stated purposes of massage, pain treatment and retail sales to the general public. The Debtor's business is currently located at 1908 Slaughter Road in the City of Madison, Alabama.

Over the last several years, the Debtor's business has grown as a full spine care center, offering manual and instrument chiropractic adjusting, massage, State of the Art equipment with full therapy and rehab, lasers, decompression traction, disc pump and spine care.

3

The Debtor rents its business premises from the Virginia Vaughn Erwin Trust c/o Bobby Erwin, 277 Bishop Road, Huntsville, Alabama 35806. Neither the Debtor nor Dr. Millar has any ownership interest in the Debtor's business premises.

All chattel property of the Debtor, including computers, furniture and equipment,  is located at its business premises and listed in the Debtor's filed Schedules A and B. Dr. Millar does not personally own any of the chattel property used by the debtor in its business.

As of the petition filing, the Debtor had seven (7) employees, including Dr. Millar. For the first quarter of 2018, the Debtor paid these employees total compensation of $57,895.24.

According to the Debtor's filed 2017 federal tax return, Dr. Millar received compensation and benefits from the Debtor in the total amount of $21,450.00. The Debtor's 2018 tax return is not yet due, but Dr. Millar's 2018 compensation is estimated expected to be the same. Dr. Millar is the only member, officer, or director of the Debtor-company.

The Debtor filed this Chapter 11 case as means of protection from creditors while sorting out its financial affairs in an orderly and fair manner.

The Debtor's business is now viable and ongoing, and the Debtor continues to function as Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. During the pendency of this case, the Debtor has continued business operations, paid its ongoing operating expenses, and kept up with its 11 U.S.C. § 503 administrative expenses. The Debtor expects its profitability to increase as its focus is now directed on running the business efficiently as it has obtained legal counsel to assist it in proposing a feasible and fair Plan of Reorganization.

**B.     Financial Condition of the Debtor; Events Necessitating Chapter 11 Protection.**

Prior to the petition filing, the Debtor experienced a cash-flow problem and got behind in its federal and state tax payments and filings. Eventually, Internal Revenue Service contacted the Debtor, demanded turnover of business records and threatened to seize the Debtor's assets and padlock its doors. Unable to pay IRS at that time, the Debtor filed an emergency petition for bankruptcy relief.

Since the petition filing, IRS has filed a proof of claim, and several amendments to said claim, alleging that the Debtor owes the federal government approximately $100,000.00 in unpaid taxes, interest and penalties. Alabama Department of Revenue and Madison County Tax Collector have also filed proofs of claim in this case.

4

Despite the adversity experienced over the past several years, the Debtor is currently experiencing steady cash flow. The relief from collections communications provided by bankruptcy protection, and the focus on core business activities, has resulted in a better operating situation overall. As seen in the Debtor's financial projections attached and discussed in the sections below, it expects growing profitability in the years to come to allow it to meet its Plan obligations. A summary of the Debtor's monthly operating reports is attached hereto collectively as Exhibit "A."

Because the Debtor anticipates a positive cash flow, it anticipates being able to pay all administrative expenses in cash upon confirmation of the Plan of Reorganization without any significant diminution to the Estate.

**C.    Debtor's Ownership and Management History.**

As stated above, Dr. Gregory B. Millar DC CCEP formed the Debtor as a domestic limited liability company ("LLC"), in Madison County, Alabama, on June 16, 2010.

Dr. Millar owns 100% of the Debtor LLC, and so he is the managing member of the Debtor LLC. He is also listed in the Office of the Alabama Secretary of State as the registered agent for the LLC.

Dr. Millar also owns three (3) other chiropractic clinics in the greater Huntsville area and is the Senior Doctor at the Laser Pain Center in Huntsville and the Alabama Laser Spine Foundation.

The Debtor projects, following confirmation of the Plan, Dr. Millar will remain the entity's only LLC member and will remain the managing member for the foreseeable future.

### III.
### THE CHAPTER 11 CASE

**A.    Commencement of the Case.**

On July 13, 2018, the Debtor filed an emergency petition to commence with this Court a voluntary case under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate the business as Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

**B.    First Day Relief.**

Soon after the Petition Date, the Debtor sought a variety of forms of relief, typically referred to as "First Day" relief, although the hearings took place over the next several weeks. Initially, the Debtor

sought and the Court approved the retention of Sparkman, Shepard & Morris, P.C., as bankruptcy counsel.

In addition, the Debtor received the Court's approval of a variety of routine motions allowing it, among other things, to fix the procedure for periodic interim allowance of compensation and expenses for the Debtor's attorneys. The Debtor also sought Court approval for the Debtor to employ a CPA to assist the Debtor in preparing and filing its delinquent federal and state tax returns.

**C.      Formation of Unsecured Creditors' Committee.**

Soon after the commencement of this case, the Bankruptcy Administrator for the Northern District of Alabama sent out a letter soliciting participation by the Debtor's unsecured creditors for an Official Committee of Unsecured Creditors. However, due to the meager response, the Bankruptcy Administrator did not appoint an Unsecured Creditors' Committee in this case.

**D.      Significant Events During the Case.**

Since the beginning of this case in Chapter 11, the majority of the Debtor's attention and resources have been focused on running the business and reviewing creditor claims. Aside from engaged in normal operations, as otherwise discussed in this Disclosure Statement, the Debtor reports no other significant events occurring during the pendency of this case.

**E.      Assets and Liabilities of the Debtor.**

**1.      Debtor's Major Assets.**

**a.      Unrestricted Cash and Short Term Investments.**

Debtor had approximately $5,473.74 in cash and bank accounts as reflected by the Debtor's filed Schedule B as of the petition filing date.

**b.      Real Estate.**

The Debtor does not own any real property.

**c.      Personal Property.**

As of the petition filing date, the Debtor had office equipment it valued at $500.00, a note receivable with a face value of $6,000.00, and furniture and fixtures it valued at $18,500.00, as reflected by the Debtor's filed Schedule B.

6

### d. Accounts Receivable.

The Debtor had $16,601.01 accounts receivable under 90 days old and $36,369.51 in account receivable over 90 days old for total accounts receivable of $52,970.52, as reflected by the Debtor's filed Schedule B as of the petition filing date.

### e. Causes of Action.

The Debtor is not aware of any causes of action, and no other adversary proceedings or state court actions are pending. However, the Debtor continues to investigate possible causes of action or setoffs it might have.

With respect to possible preference actions, any entity or person who received a payment or other property from the Debtor within the 90 days before the Petition Date (or one year before the Petition Date if the entity or person is an insider, as defined in Section 547(b)(4)(B) of the Bankruptcy Code) is a potential target by the Debtor for a preference action under Section 547 of the Bankruptcy Code.

The Debtor is evaluating the scheduled and filed claims, including priority tax claims, and may object to these claims either before or after confirmation. All causes of action of the Debtor, whether arising under the Bankruptcy Code or otherwise, are reserved and retained by the Debtor.

### 2. Liabilities.

As of the Petition Date, the Debtor listed liabilities totaling $119,604.74, as reflected by the Debtor's filed Schedules D-F.

# IV.

# SUMMARY OF PLAN

**A.** **Overview.**

THIS SECTION PROVIDES A SUMMARY OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN AND THE MEANS FOR IMPLEMENTATION OF THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN. ALL CAPITALIZED TERMS USED BUT NOT DEFINED IN THIS SECTION HAVE THE MEANINGS ASCRIBED TO SUCH TERMS IN THE PLAN.

**B.** **Treatment of Administrative Expense Claims and Priority Tax Claims.**

 1. **Administrative Expense Claims.**

Except to the extent that a holder of an Allowed Administrative Expense Claim has been paid by a Debtor prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash from the Debtor obligated for the payment of such Allowed Administrative Expense Claim in an amount equal to the Allowed amount of such Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by a Debtor or other obligations incurred by such Debtor shall be paid in full and performed by such Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

 2. **Professional Compensation and Reimbursement Claims.**

Other than a professional retained by the Debtor pursuant to the Ordinary Course Professional Order, any entity seeking an award of the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred on behalf of the Debtor and any Creditors' Committee through and including the Effective Date under Section 105(a), 363(b), 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file its final application for allowance of such compensation and/or reimbursement by no later than the date that is 120 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court, and (b) be paid by or on behalf of the Debtor in full and in Cash in the amounts Allowed upon (i) the date the order granting such award

8

becomes a Final Order, or as soon thereafter as practicable, or (ii) such other terms as may be mutually agreed upon by the claimant and the Debtor obligated for the payment of such Allowed Claim. The Debtor is authorized to pay compensation for professional services rendered and reimburse expenses incurred on behalf of the Debtor and the Creditors' Committee after the Effective Date in the ordinary course and without Bankruptcy Court approval.

       **3.**     **Priority Tax Claims.**

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive from one or more of the Debtor(s) obligated for the payment of such Allowed Priority Tax Claim, and at the sole option of such Debtor(s), (i) Cash in an amount equal to the Allowed amount of such Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, or (ii) equal Cash payments to be made initially on the Effective Date or as soon thereafter as practicable and monthly thereafter in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate, over a period from the Effective Date through the fifth (5th) anniversary after the Commencement Date; provided, however, that such election shall be without prejudice to the Debtor's right to prepay such Allowed Priority Tax Claim in full or in part without penalty.

**C.**     **Classification and Treatment of Claims and Interests: Summary.**

The following is a designation of the classes of Claims and Interests under this Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Claims that are not impaired have been noted and will not vote on the Plan. A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest qualifies within the description of that class, and is classified in another class or classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other class or classes. A Claim or Interest is classified in a particular class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that class and has not been paid, released or otherwise satisfied before the Effective Date; a Claim or Interest which is not an Allowed Claim or Interest is not in any Class. Notwithstanding anything to the contrary contained in this Plan, no distribution shall be made on account of any Claim or Interest that is not an Allowed Claim.

A copy of the clerk's Claims Register as of January 6, 2019 is attached hereto as Exhibit "B." In any instance where the information in a proof of claim listed on the Claims Register differs from the information in the Debtor's filed schedules, the information in the proof of claim will be deemed the

correct information for the terms of this Plan. However, the Debtor reserves the right to object to any filed proof of claim, as more fully explained elsewhere in this Plan.

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Secured Claim ADOR | Claim # 3 ($1,100.39) Impaired | The creditor in this class will be paid in full their approved claim amount over the course of a 60-month term with interest accruing at the rate of 5.00%, with a standard amortization schedule for the term. Except as otherwise provided, this creditor will retain all security interests in any collateral. New payments will begin on the Effective Date. (Estimated monthly payment of $20.77). |
| Class 2 – Unsecured Priority Tax Claims ADOR & IRS | Claims # 1 ($85,279.80), #2 ($104.89), and #4 ($7,400.12) Impaired | The creditors in this class will be paid in full their approved claim amount over the course of a 60-month term with interest accruing at the rate of 5.00%, with a standard amortization schedule for the term. New payments will begin on the Effective Date. (Estimated monthly payment of $1,609.34 to IRS and $141.63 to ADOR). |
| Class 3 – De Minimis Unsecured Priority Claims | Claims # 5 ($745.44) and #6 ($298.38) Impaired | The creditors in this class will be paid in full their approved claim amount, without interest, within 60 days of the effective date. |
| Class 4 – General Unsecured Claims | Claims # 1 ($20,213.84), #2 ($65.00), and #4 | Beginning on the Effective Date, Debtor will begin making monthly payments of $100.00, split on a pro-rata basis between all creditors in this Class on their |

10

| | | |
|---|---|---|
| | ($219.91), Impaired | approved claim amounts, until the sum of 10% of the total allowed claims in this class are paid. Thereafter, any remaining balance on the claims in this Class will be forever discharged. Payments to creditors in this class are estimated to last for a term of 21 months (Total estimated class payment to IRS = $2,021.38; total estimated class payment to ADOR = $28.49). (Estimated monthly payment of $98.61 to IRS and $1.39 to ADOR). |
| Class 5 – Interests of Equity Interest Holders in Debtor | Impaired; Not Entitled to Vote | Equity interest holders will retain their membership interests in Debtor and, in order to comply with the new value exception to the absolute priority rule, will contribute the sum of $1,000.00 to the Debtor entity by or before the Plan's Effective Date. |

Note: Provided that all Claims will have been paid to the extent provided for in this Plan, the Debtor will retain all Assets, subject to all remaining perfected encumbrances, as well as any remainder of the Estate not otherwise liquidated.

**D.      Debtor's Rational for Determining Recovery Percentiles to Classes Contemplated in the proposed Plan**

**1.      Secured Creditor (Class 1).**

The creditor in Class 1 will be paid in full because this creditor is over secured for value in the Debtor's property and is entitled to payment-in-full. 11 U.S.C. § 506(b).

**2.      Priority Unsecured Creditors (Classes 2-3).**

The creditors in Classes 2 and 3 will be paid in full because these claims rare entitled to priority pursuant to 11 U.S.C. § 507(a)(8) and the Plan must contemplate payment in full before any distributions are allowed to general unsecured creditors.

Case 18-82075-CRJ11    Doc 65    Filed 02/27/19    Entered 02/27/19 14:43:36    Desc Main
Document      Page 11 of 40

3. **General Unsecured Creditors (Classes 4).**

The Plan proposes paying unsecured creditors a total of 10% of their allowed claims based on the net revenue available for plan-payments as projected for the years 2019-2023 and attached to this Disclosure Statement as Exhibit "E" and discussed in Section VI(A)(2)(c). According to Ex. E, the Debtor expects to contribute the majority of its net revenue available for plan-payments to paying the creditors in Classes 1-3, leaving little in funds remaining for the general unsecured creditors, whose priority is lower that these other classes of creditors. Accordingly, the Debtor proposed a payment of 10% because it is the largest amount the Debtor believes it can reliably pay to its unsecured creditors, in accord with the budget in Ex. E, without running the risk of likely defaulting on its payment obligations to the creditors in this class.

4. **Equity Security Holders (Class 5).**

The equity securities holders will retain their interests in the Debtor, despite being lower-priority claimants than the general unsecured creditors, because of the proposed satisfaction of New Value Exception to the Absolute Priority Rule, as discussed in Sections III(E)(2), (M), & (N) of this Disclosure Statement.

E. **Means for Execution and Implementation of the Plan.**

1. **Funding of the Distribution.**

On the Effective Date, the Debtor shall first fund payments to the holders of Allowed Administrative Claims.

2. **"New Value" To Be Contributed by Members.**

Because the "New Value" rule may apply, the equity security holders will contribute $1,000.00 by the Effective Date of the Plan. The Debtor's basis for determining the sum of $1,000.00 as new value is discussed in Sections III(M) & (N) of this Disclosure Statement.

The Debtor will use the New Value for general operation expenses and towards to payment of allowed creditors claims pursuant to the payment plan it its confirmed Plan. The Debtor will not distribute any portion of the New Value to its equity security holders.

Case 18-82075-CRJ11    Doc 65    Filed 02/27/19    Entered 02/27/19 14:43:36    Desc Main
Document      Page 12 of 40

3. **Corporate Action.**

On the Effective Date, the Debtor shall be authorized and directed to take all necessary and appropriate actions to effectuate the transactions contemplated by the Plan and Disclosure Statement.

4. **Preservation of Rights of Action.**

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan in accordance with Section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce any claims, rights and causes of action that the Debtor or the Estate may hold against any entity, including, without limitation, any claims, rights or causes of action arising under Sections 544 through 551 or other sections of the Bankruptcy Code or any similar provisions of state law, or any other statute or legal theory. The Debtor or any successor to or designee thereof may pursue those rights of action, as appropriate, in accordance with what is in the best interests of the Debtor.

5. **Objections to Claims.**

Except as otherwise provided for with respect to applications of professionals for compensation and reimbursement of expenses under Article 3 of the Plan, or as otherwise ordered by the Bankruptcy Court after notice and a hearing, objections by any party other than the Debtor to filed Claims shall be Filed and served upon the holder of such Claim or Administrative Claim not later than the Effective Date, unless this period is extended by the Court. Such extension may occur *ex parte*. After the Effective Date, only the Debtor shall have the exclusive right to object to Claims.

F. **Funding and Methods of Distribution and Provisions for Treatment of Disputed Claims.**

1. **Funding of Distributions under the Plan.**

The Debtor's normal cash flow shall be the sole source of funds for the payments to creditors authorized by the U.S. Bankruptcy Court's confirmation of this Plan. The Debtor reserves the right to sell collateral for the purpose of providing some funding for the Plan as the Debtor deems necessary.

2. **Distributions to Holders of Allowed Administrative Expense Claims.**

Commencing on the Effective Date, the Debtor shall, in accordance with the Plan, distribute to each holder of a then unpaid Allowed Administrative Expense Claim in the Allowed amount of such holder's Claim if and to the extent that the balance, if any, of such Claim is Allowed by Final Order.

The Debtor shall not tender a payment to the holders of Allowed Administrative Expense Claims until all Disputed Claims that are alleged to be Administrative Claims have been allowed or disallowed.

### 3. Disputed Claims.

Notwithstanding any other provisions of the Plan, no payments or distributions shall be made on account of any Disputed Claim until such Claim becomes an Allowed Claim, and then only to the extent that it becomes an Allowed Claim.

### 4. Delivery of Distributions and Undeliverable or Unclaimed Distributions; Failure to Negotiate Checks.

The Plan established procedures for the delivery of distributions and for the disposition of undeliverable distributions and checks that are not timely negotiated.

### 5. *De Minimis* Distributions.

No Cash payment of less than twenty dollars ($20.00) shall be made to any holder on account of an Allowed Claim unless a request therefor is made in writing to the Debtor.

### 6. Compliance with Tax Requirements.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

### 7. Setoffs.

Unless otherwise provided in a Final Order or in this Plan, the Debtor may, but shall not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever the Debtor may have against the holder thereof or its predecessor, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claims the Debtor may have against such holder or its predecessor.

## G. Treatment of Executory Contracts and Unexpired Leases.

The Plan constitutes and incorporates a motion by the Debtor to reject, as of the Effective Date, all pre-petition executory contracts and unexpired leases to which the Debtor is a party, except for any executory contract or unexpired lease that (i) has been assumed or rejected pursuant to a Final Order, or (ii) is the subject of a pending motion for authority      to assume the contract or lease filed by the

14

Debtor prior to the Confirmation Date. The Plan establishes a bar date for filing Rejection Claims not already barred.

## H.    Effects of Plan Confirmation.

### 1.    No Liability for Solicitation or Participation.

As specified in Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

### 2.    Limitation of Liability.

Neither the Debtor and any professional Persons retained by them; any of their affiliates nor any of their officers, directors, partners, associates, employees, members or agents (collectively the "Exculpated Persons"), shall have or incur any liability to any Person for any act taken or omission made in good faith in connection with or related to the Bankruptcy Case or actions taken therein, including negotiating, formulating, implementing, confirming or consummating the Plan, the Disclosure Statement, or any contract, instrument, or other agreement or document created in connection with the Plan. The Exculpated Persons shall have no liability to any Creditors or Equity Security Holders for actions taken under the Plan, in connection therewith or with respect thereto in good faith, including, without limitation, failure to obtain Confirmation of the Plan or to satisfy any condition or conditions, or refusal to waive any condition or conditions, precedent to Confirmation or to the occurrence of the Effective Date. Further, the Exculpated Persons will not have or incur any liability to any holder of a Claim, holder of an Interest, or party-in-interest herein or any other Person for any act or omission in connection with or arising out of their administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as finally determined by the Bankruptcy Court, and in all respects such persons will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### 3.    Other Documents and Actions.

The Debtor as Debtor-In-Possession may execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.

4.      **Term of Injunctions or Stays.**

Unless otherwise provided, all injunctions or stays provided for in the Reorganization Case pursuant to Sections 105 or 362 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

So long as the Debtor's Chapter 11 case is not dismissed or the Debtor has failed to cure any Plan default, as described in Section K below, the protections afforded it by 11 U.S.C. § 362 will remain in full effect to stay all collection actions of any pre-petition debts, claims, liens, or other related occurrences against the Debtor, the bankruptcy estate, or property of the bankruptcy estate for the pendency of its Chapter 11 Plan.

5.      **Stay on Governmental Units from Engaging in any Collection Action Against any Responsible Persons During the Pendency of the Plan.**

Unless otherwise provided, all Governmental Units, as defined by the Bankruptcy Code, are stayed from engaging in any collection action of any nature against any employee, owner, manager, director, or principal of the Debtor relating to or arising from a tax liability of the Debtor which is concurrently or jointly assessed against any employee, owner, manager, director, or principal of the Debtor.

This section applies to any non-debtors deemed a "responsible person" and assessed the Trust Fund Recovery Penalty from a tax due arising from or due and owed by the Debtor in the ordinary course of operating its business. All Governmental Units must first look to the Debtor for satisfaction of any such tax debts and then may only take collection action against any responsible person if the Debtor's Chapter 11 case has been dismissed by the Bankruptcy Court, the Debtor's Plan fails to provider for satisfaction of the amounts to which any non-debtor is jointly responsible, or the Debtor has failed to cure any Plan default to that Governmental Unit, as described in Section K, below.

I.      **Confirmability of Plan and Cramdown.**

The Debtor requests Confirmation under Section 1129(b) of the Bankruptcy Code if any impaired class does not accept the Plan pursuant to Section 1126 of the Bankruptcy Code. In that event, the Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code requires modification.

16

**J.      Retention of Jurisdiction.**

The Plan provides for the Bankruptcy Court to retain the broadest jurisdiction over the reorganization case as is legally permissible so that the Bankruptcy Court can hear all matters related to the consummation of the Plan, the claims resolution process, and the administration of the Chapter 11 Estate.

**K.      Default and Opportunity to Cure.**

During the pendency of this Plan, should any party-in-interest aver that the Debtor has materially defaulted to any of its obligations under this Plan, such party must give written notice of the default to the Debtor and the Debtor's Counsel listed below. The Debtor will have 21 days from receipt of the notice to cure any such default. If the Debtor fails to cure within this 21-day deadline, the party giving notice of the default may proceed accordingly with any legal rights available under applicable law.

**L.      Notices.**

Notices to be provided under this Plan shall be transmitted to the Debtor by service to both of the following addresses:

Madison Chiropractic and Nutrition Center, LLC
c/o Their Attorneys
SPARKMAN, SHEPARD & MORRIS, P.C.
P.O. Box 19045
Huntsville, AL  35804

and

Madison Chiropractic and Nutrition Center, LLC
P.O. Box 21157
Huntsville, AL 35813

**M.      The Absolute Priority Rule and New Value to be Contributed.**

The leading decision on the absolute priority rule is *Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 442, 119 S.Ct. 1411, 1416, 143 L.Ed.2d 607 (1999), in which the U.S. Supreme Court held that the debtor's pre-bankruptcy equity holders could not, over the objection of a senior class of impaired creditors, contribute new capital to retain ownership interests in the new entity, when that opportunity was given exclusively to the old equity holders without consideration of alternatives or    market valuation. Id. at 437, 119 S.Ct. at 1414.

17

Since *203 North LaSalle* , a number of federal courts have held that a plan of reorganization must:

1. Allow for competing plans; and
2. Subject the opportunity to own the reorganized company to a "market place" test by allowing others to bid.

*Cf. In re Global Ocean Carriers Ltd.*, 251 B.R. 31 (Bankr. De. 2000); In re Situation Management Systems, Inc., 252 B.R. 859 (Bankr. Mass. 2000). In the present case, the exclusivity period for filing competing plans has passed. Thus, it is not necessary for the Debtor's Plan to specify that competing plans are allowed.

Should the Absolute Priority Rule apply, in order to comply with the "market place" test the Debtor will advertise the opportunity to purchase the Debtor in at least two newspapers of general circulation in Alabama and at least two trade publications with circulation outside of Alabama.

Should parties other than the current owner desire to submit competing offers to purchase the Debtor company, those offers shall be submitted to the Court by or before a deadline to be established and noticed to all parties-in-interest to this case. The Court will then hold a hearing to determine the terms, conditions, and bidding procedures of an auction to purchase the Debtor company.

The Debtor will use this New Value for general operation expenses and towards to payment of allowed creditor claims pursuant to the confirmed Plan of Reorganization. The Debtor will not distribute any portion of the New Value to its equity security holders.

**N.       Basis of Determining the New Value to be Contributed by the Debtor's Equity Security Holders.**

The sole LLC member's offer of $1,000.00 as new value is based upon the following analysis:

(1)     The Debtor is currently insolvent, based on the liquidation analysis discussed in Section VI(A)(2)(c) and in the attached Exhibit "C";

(2)     Should the Debtor liquidate, allowed secured creditors could expect a payout of approximately 14% of their allowed claims, priority creditors $0.00, general unsecured creditors $0.00, and equity security creditors $0.00;

(3)     No property or residual interests would remain following liquidation;

(4)     Equity security holders would expect to receive no return from the liquidation;

18

(5)      Pursuant to the terms of the plan of reorganization proposed above and the Debtor's projected financials in attached as Exhibit "D", the Debtor projects to remain insolvent until the completion of its 60-month payment plan in its the plan of reorganization; and

(6)      The Debtor does not expect to make any member distributions during the terms of its payment plan in effect under its Plan of Reorganization.

Accordingly, any purchaser of the Debtor's equity security interest bears the possibility that its security interest will have no value until five years after the Effective Date. While the Debtor proposes its Plan of Reorganization in good-faith and believes that it can successfully reorganize, there is substantial risk in any business investment for equity-security holders, especially for an insolvent company attempting to reorganize.

The $1,000.00 offered by the current owner of the Debtor is made good-faith to show his ongoing commitment to acting it the best interest of the Debtor and its creditors. This offer represents a contribution of funds in excess of liquidation or book value of the Debtor.

## V.
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion is a summary of certain federal income tax aspects of the Plan and is for general information only. This discussion is based upon existing provisions of the Internal Revenue Code of 1986, as amended ("IRC"), existing regulations thereunder, and current administrative rulings and court decisions. No assurance can be given that legislative or administrative changes or court decisions may not be forthcoming which would require significant modification of the statements expressed in this section. The discussion does not address foreign, state or local tax consequences of the Plan, nor does it purport to address the federal tax consequences of the Plan to special classes of taxpayers (such as foreign companies, nonresident alien individuals, S corporations, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, broker-dealers and tax-exempt organizations). Accordingly, it should not be

19

relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim or Interest.

Due to the complexity of the transactions to be consummated pursuant to the Plan, some of which are discussed below; the lack of applicable legal precedent and the possibility of changes in law; differences in the nature of various Claims; differences in individual Claim holders' methods of accounting; and the potential for disputes as to legal and factual matters, the federal income tax consequences described herein are subject to significant uncertainties.

NO RULING HAS BEEN SOUGHT OR OBTAINED FROM THE IRS WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN OBTAINED BY DEBTOR WITH RESPECT THERETO. NO REPRESENTATIONS OR ASSURANCES ARE BEING MADE WITH RESPECT TO THE FEDERAL INCOME TAX CONSEQUENCES AS DESCRIBED HEREIN. CERTAIN TYPES OF CLAIMANTS AND INTEREST HOLDERS MAY BE SUBJECT TO SPECIAL RULES NOT ADDRESSED IN THIS SUMMARY OF FEDERAL INCOME TAX CONSEQUENCES. THERE ALSO MAY BE STATE, LOCAL, OR FOREIGN TAX CONSIDERATIONS APPLICABLE TO A HOLDER OF A CLAIM OR INTEREST THAT ARE NOT ADDRESSED HEREIN. EACH HOLDER OF A CLAIM OR INTEREST AFFECTED BY THE PLAN MUST CONSULT, AND RELY UPON, HIS OR HER OWN TAX ADVISOR REGARDING THE SPECIFIC TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO THAT HOLDER'S CLAIM OR INTEREST. THIS INFORMATION MAY NOT BE USED OR QUOTED IN WHOLE OR IN PART IN CONNECTION WITH THE OFFERING FOR SALE OF SECURITIES.

## A.    Federal Income Tax Consequences to Debtor.

Under the Plan, the Debtor will be paying Plan liabilities from normal cash flow. There should be no net operating profit or loss to the Debtor following the Effective Date resulting from the transactions contemplated by the Plan.

## B.    Federal Income Tax Consequences to Holders of Claims.

### 1.    Holders of Claims.

Holders of Claims will recognize a gain or loss equal to their respective amounts realized (if any) under the Plan in respect of their Claims less their respective tax bases in their Claims. The amounts realized for this purpose generally will equal the sum of the cash and the fair market value of

any other consideration received under the Plan in respect of their Claims. The recognition of gain or loss by a holder of Claims may also be affected by the holder's accounting method and other factors and circumstances particular to such holder.

Holders of Claims not previously required to include in their taxable income any accrued but unpaid interest on a Claim may be treated as receiving taxable interest, to the extent any consideration they receive under the Plan is allocable to such accrued but unpaid interest. Holders previously required to include in their taxable income any accrued but unpaid interest on a Claim may be entitled to recognize a deductible loss, to the extent that such accrued but unpaid interest is not satisfied under the Plan.

**C.     Backup Withholding and Information Reporting.**

Payors of interest, dividends, and certain other reportable payments are generally required to withhold thirty-one percent (31%) of such payments if the payee fails to furnish such payee's correct taxpayer identification number (social security number or employer identification number), to the payor. The Debtor may be required to withhold a portion of any payments made to a holder of an Allowed Claim that does not provide its taxpayer identification number.

**D.     Importance of Obtaining Professional Tax Assistance.**

THE FOREGOING IS INTENDED AS A SUMMARY ONLY, AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH CONSEQUENCES MAY ALSO VARY BASED ON THE PARTICULAR CIRCUMSTANCES OF EACH CLAIM HOLDER. ACCORDINGLY, EACH CLAIM AND INTEREST HOLDER IS STRONGLY URGED TO CONSULT WITH HIS, HER OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX CONSEQUENCES UNDER THE PLAN.

# VI.

## VOTING PROCEDURES AND CONFIRMATION REQUIREMENTS.

### A.    Confirmation of the Plan.

#### 1.    Confirmation Hearing.

Section 1128 of the Bankruptcy Code requires the Court, after notice, to hold a hearing on whether the Plan and its proponents have fulfilled the confirmation requirements of Section 1129 of the Bankruptcy Code. A hearing (the "Confirmation Hearing") to consider confirmation of the Plan will be scheduled at the United States Bankruptcy Court for the Northern District of Alabama. The Confirmation Hearing may be adjourned from time to time by the Court without further notice except for the announcement of the adjourned date at the Confirmation Hearing.

Any objection to confirmation must be made in writing and must specify in detail the name and the address of the Person objecting, the grounds for the objection and the nature and amount of the Claim or Interest held by the objector. Any such objection must be filed with the Court and served upon the parties designated in the notice of the confirmation hearing (the "Confirmation Notice") on or before a date which will be specified in the Order approving this Disclosure Statement. Unless an objection to confirmation is timely served and filed, it will not be considered by the Court.

#### 2.    Requirements for Confirmation of the Plan.

In order to confirm the Plan, the Bankruptcy Code requires that the Court make a series of findings concerning the Plan and the Debtor, including that: (a) Claims and Interests are classified in the Plan in a permissible manner; (b) the Plan complies with the applicable provisions of the Bankruptcy Code; (c) the Debtor has complied with applicable provisions of the Bankruptcy Code; (d) the Debtor has proposed the Plan in good faith and not by any means forbidden by law; (e) the disclosure required by Section 1125 of the Bankruptcy Code has been made; (f) the Plan has been accepted by the requisite majorities of holders of Claims and Interests in each impaired Class of Claims or Interests, or, if accepted by at least one but not all of such Classes, is "fair and equitable," and does not discriminate unfairly as to any non-accepting class, as required by the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code; (g) the Plan is feasible; (h) the Plan is in the "best interests" of all holders of Claims and Interests in an impaired class by providing to such holders property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a Chapter 7 liquidation, unless each holder of a Claim or Interest in such Class has accepted the Plan; and (i) all

22

bankruptcy fees payable to the Clerk of the Court and the Bankruptcy Administrator under 28 U.S.C. § 1930 have been paid, or the Plan provides for the payment of such fees on the Effective Date.

### a. Acceptance.

Pursuant to Section 1126 of the Bankruptcy Code, the Plan is accepted by an impaired Class of Claims if holders of two-thirds in dollar amount and a majority in number of Claims of that Class vote to accept the Plan. Only the votes of those holders of Claims who actually vote (and are entitled to vote) to accept or reject the Plan count in this tabulation. The Plan will be accepted by an impaired Class of Interests if holders of two-thirds of the amount of outstanding shares in such class vote to accept the Plan (and only those voting count in the tabulation). Pursuant to Section 1129(a)(8), all the impaired Classes of Claims and Interests must vote to accept the Plan in order for the Plan to be confirmed on a consensual basis (and at least one such Impaired Class must accept the Plan without including the acceptance by an insider). However, under the cramdown provisions of Section 1129(b), only one impaired Class of Claims (determined without including the acceptance by an insider) needs to accept the Plan if the other conditions to cramdown are met.

The Plan has three Classes of Claims which are Impaired and are entitled to vote on the Plan (Classes 1 through 3).

### b. Best Interests Test/Liquidation Analysis.

Notwithstanding the acceptance of the Plan by each Impaired Class, Section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court determine that the Plan is in the best interests of each holder of a Claim or Interest in an Impaired Class if any holder in that Class has voted against the Plan. Accordingly, if an Impaired Class under the Plan does not unanimously accept that Plan, the "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of such Impaired Class a recovery on account of the member's Claim or Interest that has a value, as of the Effective Date, that is not less than the value of the distribution that each such member would receive or retain if Debtor were liquidated under Chapter 7 of the Bankruptcy Code commencing on the Effective Date.

To determine what members of each impaired Class of Claims would receive if the Debtor's estate was liquidated under Chapter 7, the Court must consider the values that would be generated from a liquidation of the Debtor's assets and properties in the context of a hypothetical liquidation under Chapter 7. From a review of the Debtor's assets and liabilities, it is apparent that liquidation would not be a feasible solution to the repayment of        these Debtor's debts.

23

There are no long-term accounts receivables or residuary contact rights. Accordingly, a Chapter 7 Trustee would need to liquidate the Debtor's assets. It is highly likely that unsecured priority creditors would receive only partial satisfactions of their claims and general unsecured creditors would receive no distribution in a Chapter 7 liquidation of the Debtor's estate. The Debtor has prepared a detailed liquidation analysis which is attached hereto as Exhibit "C."

Thus, the Plan, which provides for the payment of secured and priority claims, retention of the Debtor's property, and provides a distribution to general unsecured creditors, is a superior option to a Chapter 7 liquidation.

### c. Feasibility.

Section 1129(a)(11) of the Bankruptcy Code requires a finding that Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor in interest, unless as here, liquidation is expressly contemplated by the Plan. The Debtor believes that it will be able to perform its obligations under the Plan and that therefore the Plan is feasible within the meaning of Section 1129(a)(11) of the Bankruptcy Code.

The details of this case strongly support the feasibility of the proposed Plan and are supported by the following attachments to this Plan:

- The Debtor's Profit and Loss Statements for 2014-2018 are attached hereto as Exhibit "D."

- The Debtor's Projected Profit and Loss Statement for years 2019-2023 are attached hereto as Exhibit "E."

### d. Classification.

Section 1122 of the Bankruptcy Code sets forth the requirements relating to classification of claims. Section 1122(a) provides that claims or interest may be placed in a particular class only if they are substantially similar to the other claims or interest in that class. The Debtor believes that all Classes under the Plan satisfy the requirements of Section 1122(a). The Debtor believes that the classification of Claims set forth in the Plan is appropriate in classifying substantially similar Claims together, and does not discriminate unfairly in the treatment of those Classes. The Debtor believes that the Plan adheres to the absolute priority rule and treats holders of Claims and Interests in accordance with their contractual entitlement and applicable law.

Case 18-82075-CRJ11    Doc 65    Filed 02/27/19    Entered 02/27/19 14:43:36    Desc Main
Document      Page 24 of 40

**B.**     **Non-Consensual Confirmation.**

The Bankruptcy Code provides for confirmation of the Plan even if it is not accepted by all impaired Classes, as long as at least one impaired Class of Claims has accepted it (without counting the acceptances of insiders). These so-called "cramdown" provisions are set forth in Section 1129(b) of the Bankruptcy Code. The Plan may be confirmed under the cramdown provisions if, in addition to satisfying the other requirements of Section 1129 of the Bankruptcy Code, it (i) is "fair and equitable" and (ii) "does not discriminate unfairly" with respect to each Class of Claims or Interests that is impaired under, and has not accepted, such Plan.

**1.**     **Fair and Equitable Standard.**

With respect to a dissenting Class of unsecured creditors, the "fair and equitable" standard requires, among other things, that the Plan contain one of two elements. It must provide either that each unsecured creditor in the Class receive or retain property having a value, as of the Effective Date, equal to the Allowed amount of its Claim, or that no holder of Allowed Claims or Interests in any junior Class may receive or retain any property on account of such Claims or Interest. The strict requirements as to the allocation of full value to dissenting Classes before junior Classes can receive a distribution are known as the "absolute priority rule." In addition, the "fair and equitable" standard has also been interpreted to prohibit any class senior to a dissenting class from receiving under a plan more than one hundred percent (100%) of its Allowed Claims.

**2.**     **The Plan Must Not Discriminate Unfairly.**

As a further condition to approving a cramdown, the Bankruptcy Court must find that the Plan does not "discriminate unfairly" in its treatment of dissenting Classes. A Plan of Reorganization does not "discriminate unfairly" if (a) the Plan does not treat any dissenting impaired Class of Claims or Interests in a manner that is materially less favorable than the treatment afforded to another Class with similar legal Claims against or Interests in the Debtor and (b) no Class receives payments in excess of that which it is legally entitled to receive for its Claims or Interests. The Debtor believes that the Plan does not discriminate unfairly as to any impaired Class of Claims or Interests.

If any impaired Class of Claims entitled to vote on the Plan does not accept the Plan by the requisite majority provided in Section 1126(c) of the Bankruptcy Code, the Debtor reserves the right to amend the Plan or undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code or both. With respect to impaired Classes of Claims or Equity Interests that

25

are deemed to reject the Plan, the Debtor will request that the Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

## C. Voting Procedures and Requirements.

### 1. Voting Requirements - Generally.

Pursuant to the Bankruptcy Code, only holders of Claims that are allowed pursuant to Section 502 of the Bankruptcy Code and that are impaired under the terms and provisions of the Plan are entitled to vote to accept or reject that Plan.

All creditors who filed proofs of claim in an amount different from the amount set forth in the Debtor's Schedules or whose Claim was not included in the Debtor's Schedules are treated as the holder of a Disputed Claim under the Plan. However, all creditors whose Claims are impaired under the Plan will be treated as holders of Allowed Claims for voting purposes only. A Claim recorded in the Schedules or in the Clerk's records as wholly unliquidated, contingent and/or undetermined shall be accorded one vote and valued at one dollar for purposes of Section 1126(c) of the Bankruptcy Code, unless the holder of such Claim files with the Court and serves a request for temporary allowance of such Claim in a greater amount for voting purposes. If a Claim is recorded in the Schedules or in the Clerk's records as unliquidated, contingent and/or undetermined in part, the holder of the Claim shall be entitled to vote that portion of the claim that is liquidated, non-contingent and undisputed in the liquidated, non-contingent and undisputed amount, subject to any limitations set forth herein and unless otherwise ordered by the Court. The Debtor's agreement to allow such creditors to vote on the Plan shall not waive the Debtor's right to treat such Claims as Disputed Claims for all other purposes.

Pursuant to the Bankruptcy Code a class of claims or interests is "impaired" if the legal, equitable, or contractual rights attaching to the claims or interests of that class are altered, other than by curing defaults and reinstating maturity.

Classes of Claims that are not impaired are not entitled to vote on the Plan, are presumed to have accepted the Plan and will not receive a Ballot. As set forth above, the Claims in Class 1 are not impaired, and such Class of Claims is not entitled to vote on the plan and is presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. The classification of Claims and their designation as impaired or not impaired is summarized above in Section V, (A) entitled "Classification and Treatment of Claims and Interests."

26

### 2. Voting Procedures.

A Ballot for voting to accept or reject the Plan will be enclosed with each copy of the Disclosure Statement that is sent by the Court to parties entitled to vote. In most cases, the Ballot enclosed with this Disclosure Statement will be printed with the amount of your Claim for voting purposes. Such amount is based on your proof of claim, the Debtor's Schedules or an order of the Court. All votes to accept or reject the Plan must be cast by using the Ballot enclosed with this Disclosure Statement.

IF YOU HAVE A CLAIM THAT IS IMPAIRED UNDER THE PLAN ENTITLING YOU TO VOTE AND YOU DID NOT RECEIVE A BALLOT, RECEIVED A DAMAGED BALLOT, OR LOST YOUR BALLOT, PLEASE CONTACT THE U.S. BANKRUPTCY COURT AT (256) 353-2817. IF YOU HOLD CLAIMS IN MORE THAN ONE CLASS, YOU MAY RECEIVE MORE THAN ONE BALLOT. YOU SHOULD COMPLETE, SIGN AND RETURN EACH BALLOT YOU RECEIVE.

Consistent with the provisions of Bankruptcy Rule 3018, the Court will fix a date as the record date for determining the holders of Claims who are entitled to receive a copy of this Disclosure Statement and to vote to accept or reject the Plan (the "Ballot Record Date"). Entities that acquire Claims after the Ballot Record Date will not be entitled to vote on the Plan.

Under the Bankruptcy Code, for purposes of determining whether the requisite acceptances have been received, only those holders that vote to accept or reject the Plan will be counted. Votes cannot be transmitted orally or by facsimile transmission. Accordingly, it is important that you return your signed and completed Ballot(s) promptly. Failure by any holder to send a duly executed Ballot with an original signature will be deemed an abstention by such holder with respect to a vote on the Plan and will not be counted as vote for or against the Plan. To accept Plan, the holder must check the box entitled "accept the Plan" on the appropriate Ballot. Any Ballot cast that does not indicate whether the holder of the Claim or Interest is voting to accept or reject the Plan will not be counted as either an acceptance or rejection of the Plan. A vote may be disregarded if the Bankruptcy Court determines, after a hearing, that such acceptances or rejection was not solicited or procured in good faith or other in accordance with the provision of the Bankruptcy Code or if a Claim was voted in bad faith.

### 3. Voting Deadline.

Voting on the Plan by each holder of a Claim in an Impaired Class is important. After carefully reviewing the Plan and this Disclosure Statement, please indicate your vote on each Ballot and return it in the pre-addressed envelope provided for this purpose.

Case 18-82075-CRJ11    Doc 65    Filed 02/27/19    Entered 02/27/19 14:43:36    Desc Main
Document    Page 27 of 40

IN ORDER TO BE COUNTED, BALLOTS MUST BE SIGNED AND RETURNED SO THAT THEY ARE RECEIVED EITHER BY THE U.S. BANKRUPTCY COURT NO LATER THAN 4:30 P.M. CENTRAL STANDARD TIME ON THE DATE SET BY THE COURT (THE "VOTING DEADLINE"). TO HAVE YOUR VOTE COUNT, YOU MUST COMPLETE, SIGN AND RETURN THE BALLOT TO:

Clerk
U.S. Bankruptcy Court
P.O. Box 2775
Decatur, Alabama 35602

PLEASE FOLLOW THE DIRECTIONS CONTAINED ON THE ENCLOSED BALLOT CAREFULLY. BALLOTS THAT ARE RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE ACCEPTED OR USED BY THE DEBTOR IN SEEKING CONFIRMATION OF THE PLAN. IT IS OF THE UTMOST IMPORTANCE TO DEBTOR THAT YOU VOTE PROMPTLY TO ACCEPT THE PLAN.

Respectfully submitted this the 27th day of February, 2019.

**MADISON CHIROPRACTIC &**
**NUTRITION CENTER, LLC**

*/s/ Dr. Gregory B. Millar*
Dr. Gregory B. Millar, Managing Member

*/s/ Tazewell T. Shepard III*
Tazewell T. Shepard III
Tazewell T. Shepard IV
*Attorneys for the Debtor*

**SPARKMAN, SHEPARD & MORRIS, P.C.**
P. O. Box 19045
Huntsville, AL 35804
Tel: (256) 512-9924
Fax: (256) 512-9837

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that this the 27th day of February, 2019, I have this day served the foregoing motion on all parties requesting notice, all parties listed on the Clerk's Certified Matrix and Richard Blythe, Office of the Bankruptcy Administrator, by electronic service through the Court's CM/ECF system and/or by placing a copy of same in the United States Mail, postage pre-paid.

*/s/ Tazewell T. Shepard IV*
Tazewell T. Shepard IV

## DEBTOR'S SUMMARY OF CHAPTER 11 OPERATING REPORTS

**July 2018**

| | |
|---|---|
| Total Monthly Sales | $ 63,920 |
| Total Monthly Receipts | $ 63,920 |
| Operating Expenses | $ 65,517 |
| Net Profit/Loss | $ - 1,597 |
| Cash on Hand at the end of month | $   9,311 |

**August 2018**

| | |
|---|---|
| Total Monthly Sales | $ 88,222 |
| Total Monthly Receipts | $ 82,286 |
| Operating Expenses | $ 84,465 |
| Net Profit/Loss | $   3,757 |
| Cash on Hand at the end of month | $   7,132 |

**September 2018**

| | |
|---|---|
| Total Monthly Sales | $ 69,098 |
| Total Monthly Receipts | $ 70,028 |
| Operating Expenses | $ 67,129 |
| Net Profit/Loss | $   1,969 |
| Cash on Hand at the end of month | $ 10,031 |

**October 2018**

| | |
|---|---|
| Total Monthly Sales | $ 66,820 |
| Total Monthly Receipts | $ 64,614 |
| Operating Expenses | $ 66,344 |
| Net Profit/Loss | $      476 |
| Cash on Hand at the end of month | $   8,301 |

**November 2018**

| | |
|---|---|
| Total Monthly Sales | $ 57,069 |
| Total Monthly Receipts | $ 64,027 |
| Operating Expenses | $ 66,115 |
| Net Profit/Loss | $ - 9,046 |
| Cash on Hand at the end of month | $   6,213 |

**EXHIBIT B**

# NORTHERN DISTRICT OF ALABAMA
## Claims Register

### 18-82075-CRJ11 Madison Chiropractic & Nutrition Center, LLC

| | |
|---|---|
| **Judge:** Clifton R. Jessup, Jr. | **Chapter:** 11 |
| **Office:** Decatur | **Last Date to file claims:** 10/23/2018 |
| **Trustee:** | **Last Date to file (Govt):** |

---

*Creditor:* (9794611)   History
\*Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

**Claim No: 1**
*Original Filed Date:* 08/03/2018
*Original Entered Date:* 08/03/2018
*Last Amendment Filed:* 12/14/2018
*Last Amendment Entered:* 12/14/2018

*Status:*
*Filed by:* CR
*Entered by:* Patricia Waln
*Modified:*

Amount claimed: $105493.64
Secured claimed: $0.00
Priority claimed: $85279.80

*History:*

| Details | | | |
|---|---|---|---|
| Details | ◉ | 1-1 | 08/03/2018 Claim #1 filed by \*Internal Revenue Service, Amount claimed: $97970.50 (Waln, Patricia) |
| Details | ◉ | 1-2 | 09/11/2018 Amended Claim #1 filed by \*Internal Revenue Service, Amount claimed: $102253.64 (Waln, Patricia) |
| Details | ◉ | 1-3 | 09/19/2018 Amended Claim #1 filed by \*Internal Revenue Service, Amount claimed: $104593.64 (Waln, Patricia) |
| Details | ◉ | 1-4 | 10/03/2018 Amended Claim #1 filed by \*Internal Revenue Service, Amount claimed: $105593.64 (Waln, Patricia) |
| Details | ◉ | 1-5 | 10/25/2018 Amended Claim #1 filed by \*Internal Revenue Service, Amount claimed: $105493.64 (Waln, Patricia) |
| Details | ◉ | 1-6 | 12/14/2018 Amended Claim #1 filed by \*Internal Revenue Service, Amount claimed: $105493.64 (Waln, Patricia) |

*Description:*

*Remarks:*

---

*Creditor:* (9794603)   History
\*State of Alabama, Department of Revenue
Legal Division
P O Box 320001
Montgomery, AL 36132-0001

**Claim No: 2**
*Original Filed Date:* 08/06/2018
*Original Entered Date:* 08/06/2018

*Status:*
*Filed by:* CR
*Entered by:* Mark D Griffin
*Modified:*

Amount claimed: $169.89
Priority claimed: $104.89

*History:*

| Details | | | |
|---|---|---|---|
| Details | ◉ | 2-1 | 08/06/2018 Claim #2 filed by \*State of Alabama, Department of Revenue, Amount claimed: $169.89 (Griffin, Mark) |

*Description:* (2-1) Business Privilege Tax - 12/31/2016
*Remarks:*

*Creditor:*     (9794603)    [History](#)
*State of Alabama, Department of Revenue
Legal Division
P O Box 320001
Montgomery, AL 36132-0001

**Claim No: 3**
*Original Filed
Date:* 08/09/2018
*Original Entered
Date:* 08/09/2018

*Status:*
*Filed by:* CR
*Entered by:* Mark D Griffin
*Modified:*

Amount  claimed: $1100.39
Secured  claimed: $1100.39

*History:*

[Details](#)    [3-1](#)    08/09/2018  Claim #3 filed by *State of Alabama, Department of Revenue, Amount claimed: $1100.39 (Griffin, Mark)

*Description:* (3-1) Withholding Tax - (6/30/2017)
*Remarks:*

---

*Creditor:*     (9794603)    [History](#)
*State of Alabama, Department of Revenue
Legal Division
P O Box 320001
Montgomery, AL 36132-0001

**Claim No: 4**
*Original Filed
Date:* 08/09/2018
*Original Entered
Date:* 08/09/2018

*Status:*
*Filed by:* CR
*Entered by:* Mark D Griffin
*Modified:*

Amount claimed: $7620.03
Priority  claimed: $7400.12

*History:*

[Details](#)    [4-1](#)    08/09/2018  Claim #4 filed by *State of Alabama, Department of Revenue, Amount claimed: $7620.03 (Griffin, Mark)

*Description:* (4-1) Withholding Tax - (12/31/2017, 3/31/2018 & 6/30/2018)
*Remarks:*

---

*Creditor:*     (9838965)
Lynda Hall, Tax Collector of Madison CO, AL
100 Northside Square, Room 116
Huntsville, AL 35801

**Claim No: 5**
*Original Filed
Date:* 08/29/2018
*Original Entered
Date:* 08/29/2018

*Status:*
*Filed by:* CR
*Entered by:* Selina G Wells
*Modified:*

Amount claimed: $745.44
Priority  claimed: $745.44

*History:*

[Details](#)    [5-1](#)    08/29/2018  Claim #5 filed by Lynda Hall, Tax Collector of Madison CO, AL, Amount claimed: $745.44 (Wells , Selina)

*Description:*
*Remarks:*

---

*Creditor:*     (9891675)
Alabama Department of Labor
649 Monroe Street, Room 4207
Montgomery AL 36131

**Claim No: 6**
*Original Filed
Date:* 10/22/2018
*Original Entered
Date:* 10/22/2018

*Status:*
*Filed by:* CR
*Entered by:* Paul Douglas White
*Modified:*

*History:*

[Details](#)    [6-1](#)    10/22/2018  Claim #6 filed by Alabama Department of Labor, Amount claimed: $298.38 (White, Paul)

*Description:* (6-1) Unemployment Taxes
*Remarks:*

Amount claimed: $298.38
Priority  claimed: $298.38

*History:*

<u>Details</u>   ◉   <u>6-1</u>    10/22/2018 Claim #6 filed by Alabama Department of Labor, Amount claimed: $298.38 (White, Paul)

*Description:* (6-1) Unemployment Taxes
*Remarks:*

# Claims Register Summary

**Case Name:** Madison Chiropractic & Nutrition Center, LLC
**Case Number:** 18-82075-CRJ11
**Chapter:** 11
**Date Filed:** 07/13/2018
**Total Number Of Claims:** 6

| | |
|---|---|
| **Total Amount Claimed\*** | $115427.77 |
| **Total Amount Allowed\*** | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | $1100.39 | |
| **Priority** | $93828.63 | |
| **Administrative** | | |

EXHIBIT C

## DEBTOR'S LIQUIDATION ANALYSIS

REAL PROPERTY – N/A

PERSONAL PROPERTY:

a. **Unencumbered cash-on-hand** (as of November 30, 2018)          $   6,213.00

b. **Equipment** (organized by classes in Plan of Reorganization):

Class 1 – ADOR Secured Claim
Creditor's Value of Collateral                              $  19,000.00
Creditor's Claim Amount                                   $    1,100.39
Assumption: Creditor repossesses some collateral to satisfy its secured debt.

c. **Additional property free and clear of liens**
Accounts receivable (as of November 30, 2018)              $  18,662.00
(less 30% discount for collectability and costs)          $  13,063.40

Collection of note                                        $   6,000.00
(less 30% costs of collection)                           $   4,200.00

All remaining personal property                           $  17,899.61
(less 30% discount for liquidation value)                $  12,529.73

FUNDS AVAILABLE FOR PRIORITY AND GENERAL UNSECURED CREDITORS      **$  36,005.40**

SATISFACTION OF DEBTS / CLASS DISTRIBUTION IN A HYPOTHETICAL LIQUIDATION

Class 1: Satisfied.

Class 2-3: Partially satisfied as follows –

Administrative Expenses
Partially satisfied.
Unpaid attorney's fees – satisfied – estimated at $5,000.00 as of the filing of this Disclosure Statement
Priority tax claims – estimated recovery – approximately $0.38 on the dollar, before accounting for Chapter 7 trustee expenses.

Class 4: General unsecured creditors:
No distribution.

Class 4: No distribution; equity-holder interests are totally extinguished.

**Madison Chiropractic & Nutrition Center**
**Historic Profit & Loss - Cash Basis**

| | FYE 2014 |
|---|---:|
| Revenues | $ 306,974 |
| | |
| Management fees | 51,293 |
| Accounting and legal | - |
| Admin and billing service | - |
| Advertising | 11,963 |
| Automobile expense | - |
| Bank fees | 2,095 |
| Computer support | 4,118 |
| Contract labor | 4,653 |
| Contributions | 250 |
| Corporate expenses | - |
| Depreciation | 3,450 |
| Director fees | - |
| Dues and subscriptions | - |
| Finance charges | 630 |
| Insurance - other | 1,004 |
| Insurance - malpractice | 519 |
| Insurance - health | 3,243 |
| Meals and entertainment | 1,820 |
| Marketing expense | 4,279 |
| Office expense | 51,559 |
| Postage and shipping | 133 |
| Professional development | 2,184 |
| Refund expense | - |
| Rent expense | 23,945 |
| Repairs and maintenance | 2,356 |
| Salaries and wages | 127,731 |
| Supplies | - |
| Taxes - payroll | 10,627 |
| Other payroll expenses | 748 |
| Taxes - other | 1,031 |
| Telephone | 4,367 |
| Travel expense | 39 |
| Utilities | 4,321 |
| Interest | 1,244 |
| Miscellaneous | 754 |
| Total Operating Expenses | 320,356 |
| | |
| Incentive payment | 11,760 |
| Penalties | - |
| Total Other Income (Expenses) | 11,760 |
| | $ (1,622) |

**Madison Chiropractic & Nutrition Center**
**Historic Profit & Loss - Cash Basis**

| | | FYE 2015 |
|---|---|---|
| Revenues | $ | 309,724 |
| | | |
| Management fees | | 101,591 |
| Accounting and legal | | - |
| Admin and billing service | | - |
| Advertising | | - |
| Automobile expense | | - |
| Bank fees | | 3,116 |
| Computer support | | 1,499 |
| Contract labor | | 2,409 |
| Contributions | | - |
| Corporate expenses | | - |
| Depreciation | | - |
| Director fees | | 1,000 |
| Dues and subscriptions | | - |
| Finance charges | | 760 |
| Insurance - other | | 1,093 |
| Insurance - malpractice | | - |
| Insurance - health | | 813 |
| Meals and entertainment | | 1,405 |
| Marketing expense | | 2,287 |
| Office expense | | 9,430 |
| Postage and shipping | | - |
| Professional development | | 1,335 |
| Refund expense | | - |
| Rent expense | | 19,120 |
| Repairs and maintenance | | 4,528 |
| Salaries and wages | | 132,516 |
| Supplies | | - |
| Taxes - payroll | | 11,809 |
| Other payroll expenses | | 179 |
| Taxes - other | | 1,241 |
| Telephone | | 2,557 |
| Travel expense | | - |
| Utilities | | 5,456 |
| Interest | | 1,152 |
| Miscellaneous | | 806 |
| Total Operating Expenses | | 306,102 |
| | | |
| Incentive payment | | - |
| Penalties | | - |
| Total Other Income (Expenses) | | - |
| | | |
| | $ | 3,622 |

**Madison Chiropractic & Nutrition Center**
**Historic Profit & Loss - Cash Basis**

| | | FYE 2016 |
|---|---|---:|
| Revenues | $ | 476,946 |
| | | |
| Management fees | | 207,650 |
| Accounting and legal | | - |
| Admin and billing service | | - |
| Advertising | | 2,346 |
| Automobile expense | | 2,405 |
| Bank fees | | 5,043 |
| Computer support | | 590 |
| Contract labor | | 18,531 |
| Contributions | | - |
| Corporate expenses | | - |
| Depreciation | | 3,524 |
| Director fees | | - |
| Dues and subscriptions | | 225 |
| Finance charges | | 2,110 |
| Insurance - other | | - |
| Insurance - malpractice | | 1,469 |
| Insurance - health | | - |
| Meals and entertainment | | 8,037 |
| Marketing expense | | 3,488 |
| Office expense | | 16,422 |
| Postage and shipping | | 11 |
| Professional development | | 593 |
| Refund expense | | - |
| Rent expense | | 18,830 |
| Repairs and maintenance | | 4,872 |
| Salaries and wages | | 178,899 |
| Supplies | | - |
| Taxes - payroll | | 14,626 |
| Other payroll expenses | | - |
| Taxes - other | | 2,059 |
| Telephone | | - |
| Travel expense | | 1,832 |
| Utilities | | 4,988 |
| Interest | | - |
| Miscellaneous | | 297 |
| Total Operating Expenses | | 498,847 |
| | | |
| Incentive payment | | 3 |
| Penalties | | (124) |
| Total Other Income (Expenses) | | (121) |
| | $ | (22,022) |

**Madison Chiropractic & Nutrition Center**
**Historic Profit & Loss - Cash Basis**

| | | FYE 2017 |
|---|---|---:|
| Revenues | $ | 618,331 |
| | | |
| Management fees | | 290,005 |
| Accounting and legal | | - |
| Admin and billing service | | - |
| Advertising | | 2,131 |
| Automobile expense | | 5,213 |
| Bank fees | | 7,345 |
| Computer support | | 830 |
| Contract labor | | 34,980 |
| Contributions | | - |
| Corporate expenses | | - |
| Depreciation | | 4,074 |
| Director fees | | - |
| Dues and subscriptions | | - |
| Finance charges | | 3,235 |
| Insurance - other | | - |
| Insurance - malpractice | | 1,958 |
| Insurance - health | | - |
| Meals and entertainment | | 9,262 |
| Marketing expense | | 3,957 |
| Office expense | | 26,575 |
| Postage and shipping | | 191 |
| Professional development | | 1,128 |
| Refund expense | | - |
| Rent expense | | 18,300 |
| Repairs and maintenance | | 6,647 |
| Salaries and wages | | 215,685 |
| Supplies | | - |
| Taxes - payroll | | 17,351 |
| Other payroll expenses | | - |
| Taxes - other | | 2,127 |
| Telephone | | 4,233 |
| Travel expense | | 441 |
| Utilities | | 5,359 |
| Interest | | - |
| Miscellaneous | | 1,204 |
| Total Operating Expenses | | 662,231 |
| | | |
| Incentive payment | | - |
| Penalties | | (723) |
| Total Other Income (Expenses) | | (723) |
| | $ | (44,623) |

**Madison Chiropractic & Nutrition Center**
**Historic Profit & Loss - Cash Basis**

| | | FYE 2018 |
|---|---|---:|
| Revenues | $ | 841,435 |
| | | |
| Management fees | | 224,388 |
| Accounting and legal | | 2,520 |
| Admin and billing service | | 35,091 |
| Advertising | | 13,839 |
| Automobile expense | | 14,770 |
| Bank fees | | 10,779 |
| Computer support | | - |
| Contract labor | | 23,295 |
| Contributions | | 2,500 |
| Corporate expenses | | 4,200 |
| Depreciation | | - |
| Director fees | | - |
| Dues and subscriptions | | - |
| Finance charges | | 2,046 |
| Insurance - other | | 1,334 |
| Insurance - malpractice | | 1,958 |
| Insurance - health | | 2,344 |
| Meals and entertainment | | 15,546 |
| Marketing expense | | 69,332 |
| Office expense | | 53,632 |
| Postage and shipping | | 263 |
| Professional development | | 3,320 |
| Refund expense | | 14,463 |
| Rent expense | | 24,500 |
| Repairs and maintenance | | 5,797 |
| Salaries and wages | | 284,878 |
| Supplies | | 1,063 |
| Taxes - payroll | | 23,120 |
| Other payroll expenses | | 6,191 |
| Taxes - other | | 2,824 |
| Telephone | | 7,390 |
| Travel expense | | 2,004 |
| Utilities | | 7,363 |
| Interest | | - |
| Miscellaneous | | 2,425 |
| Total Operating Expenses | | 863,175 |
| | | |
| Incentive payment | | - |
| Penalties | | - |
| Total Other Income (Expenses) | | - |
| | $ | (21,740) |

**MCNC Projected Budget for Years 2019-2023**

| | |
|---|---:|
| **Projected Revenues** | **845,000** |

**Ongoing Operating Expenses**

| | |
|---|---:|
| Management fees | 21,000 |
| Accounting and legal | 27,250 |
| Admin and billing service | 42,584 |
| Advertising | 10,400 |
| Automobile expense | 12,000 |
| Bank fees | 11,072 |
| Contract labor | 17,400 |
| Corporate expenses | 111,400 |
| Insurance - other | 6,365 |
| Meals and entertainment | 7,517 |
| Marketing expense | 105,600 |
| Office expense | 37,000 |
| Professional development | 3,407 |
| Rent expense | 43,500 |
| Repairs and maintenance | 5,962 |
| Salaries and wages | 308,308 |
| Taxes - payroll | 23,586 |
| Taxes - other | 2,555 |
| Telephone | 13,320 |
| Travel expense | 852 |
| Utilities | 8,517 |
| Miscellaneous | 1,555 |
| **Total Operating Expenses** | **821,150** |

**Proposed Chapter 11 Payments**

| | |
|---|---:|
| ADOR | 1,965 |
| IRS | 20,484 |
| Lynda Hall, Tax Collector | 745 |
| Additional Payment ADOR | 298 |
| **Total Annual Plan Payments** | **23,493** |

| | |
|---|---:|
| **Net Income** | 357 |